# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| WILLIAM SQUIRES, JESSE BADKE, AHMED KHALIL, MICHELLE NIDEVER, JOHN MURPHY, KEVIN NEUER, NICHOLAS WILLIAMS, and DONNA SUE SCOTT, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>TOYOTA MOTOR CORP., TOYOTA MOTOR NORTH AMERICA, INC., and TOYOTA MOTOR SALES, U.S.A., INC.,<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:18-CV-00138<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Compel Responses to Plaintiffs' Second Set of Requests for Admission Nos. 20-23, 30-47, 50, and 54 (Dkt. #102). Having considered the motion and the relevant pleadings, the Court finds that Plaintiffs' motion should be granted in part and denied in part.

## BACKGROUND

On March 1, 2018, Plaintiffs William Squires, Jesse Badke, Ahmed Khalil, Dominick Viscardi, Michelle Nidever, John Murphy, Kevin Neuer, Nicholas Williams, and Lawrence Baker filed this suit (Dkt. #1). On May 23, 2018, Plaintiffs filed their First Amended Complaint (Dkt. #15). Plaintiffs are current and former owners and lessees of Fourth Generation Model Years 2016-17 Toyota Prius vehicles ("Prius") (Dkt. #15 ¶ 1). Plaintiffs allege the Prius contains a defect that causes the windshields of the vehicle to unexpectedly crack in foreseeable driving conditions

(Dkt. #15 ¶ 2). Plaintiffs seek to certify a nation-wide class action on behalf of themselves and other current and former owners of the Prius (Dkt. #15 ¶¶ 1, 137–46).

On January 4, 2021, Plaintiffs filed the present motion (Dkt. #102). On January 18, 2021, Toyota filed a response (Dkt. #107).[1] On January 26, 2021, Plaintiffs filed a reply (Dkt. #113). On February 1, 2021, Toyota filed a sur-reply (Dkt. #117).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #50 at p. 3). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and

---

[1] "Toyota" collectively refers to Toyota Motor Company ("TMC"), Toyota Motor Sales, U.S.A., Inc. ("TMS"), and Toyota Motor North America, Inc. ("TMNA").

information sought are discoverable. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## ANALYSIS

Plaintiffs ask the Court to compel Toyota to respond to requests for admission ("RFA") numbers 20-23, 30-47, 50, and 54.[2] In support, Plaintiffs assert that Toyota's responses to the requests are deficient. Specifically, Plaintiffs claim that: (1) Toyota must answer the requests concerning both uninstalled and installed windshields (request numbers 20-23, 31-35, 39-44, 50, and 54); (2) "area" is not vague or ambiguous (request numbers 30-35 and 39-44); and (3) "maximum amount" is not vague or ambiguous (request numbers 36-38, 45-47).

Toyota responds that Plaintiffs' RFAs are improperly crafted under the Rules and cover topics better suited for other forms of discovery. Toyota further argues that Plaintiffs' terms "area"

---

[2] The relevant requests are found in Plaintiffs' Second Set of Requests for Admission.

3

and "maximum amount," as found in RFA numbers 31-47, are undefined and not capable of reasonable interpretation. According to Toyota, Plaintiffs' request numbers 20-23, 31-35, 39-44, 50, and 54 are also defective because they do not specify whether they pertain to installed or uninstalled windows.

Federal Rule of Civil Procedure 36 governs requests for admission. *See* FED. R. CIV. P. 36. Rule 36(a) provides, in relevant part, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: facts, the application of law to fact, or opinions about either; and the genuineness of any described documents." FED. R. CIV. P. 36(a). "Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (citations omitted). "Such breadth allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters." *Id.* (citing 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2254 (3d ed. 1994)).

As a threshold matter, the Court notes that "Toyota did not object to [r]equests 50 and 54 based on Plaintiffs' failure to distinguish between pre- and post-installation of the windshields," but rather, Toyota "denied the [r]equests" (Dkt. #107 at p. 14). As such, "there is no objection for the Court to consider" (Dkt. #107 at p. 14). The Court, having reviewed Toyota's answers proffered to Plaintiffs, will not compel Toyota to re-answer requests already denied. The Court therefore does not address requests numbers 50 and 54 further.

### I. Proper Discovery Tool for Information Sought

Toyota first contends that Plaintiffs' RFAs are improperly crafted under the Rules and cover topics better suited for other forms of discovery. Toyota claims that "Plaintiffs' RFAs do

4

not set forth 'simply and directly' facts that it asks Toyota to admit or deny, but rather, they seek admissions as to global statements about the Toyota entities' collective knowledge or possession of documents as an organization" (Dkt. #107 at p. 6) (emphasis omitted).

Plaintiffs respond that "[t]he [r]equests concern only whether Toyota possesses documents and knowledge concerning stress levels in Class Vehicles windshields, not admissions concerning those stress levels themselves" (Dkt. #113 at p. 3). Because Plaintiffs' requests can broadly be categorized as: (1) those seeking information regarding potential documents within Toyota's control; and (2) those seeking information regarding Toyota's knowledge on stress levels in Class Vehicle windshields, the Court analyzes Toyota's objections as such.

### a. Requests Concerning Documents

Plaintiffs' RFA numbers 30-32, 39-41, 50, and 54 seek information regarding documents in Toyota's possession. Specifically, Plaintiffs ask Toyota to disclaim that any of its entities have documents concerning: (1) "where the area of maximum residual tensile stress is located within the glass of the windshields equipped in subject vehicles[;]" (2) "where the area of maximum residual compressive stress is located within the glass of the windshields equipped in subject vehicles[;]" (3) "the number of confirmation vehicles that reliability tests were performed on to determine the levels of internal stress or surface stress in the glass of the windshields equipped in subject vehicles[;]" and (4) "whether the glass of the windshields equipped in subject vehicles met the target stress levels set forth in the Technical Instruction Sheet No. 01203-00127, TOYO00041259-68" (Dkt. #102, Exhibit 2 at pp. 9–10, 12, 15–16).[3]

Whether RFAs are the best way to obtain this information is irrelevant: the only proper inquiry is whether RFAs are an *appropriate* way of obtaining the information. The Court, upon

---

[3] The documents sought in (3) and (4) are found in Plaintiffs' requests numbers 50 and 54—of which the Court has determined have adequately been denied by Toyota.

careful consideration, is persuaded that the requests propounded by Plaintiffs regarding the existence of documents are within the scope of RFAs. *See* FED. R. CIV. P. 36(a). Plaintiffs are not asking Toyota to admit or deny the information contained within the documents; rather, Plaintiffs are requesting Toyota admit or deny that the documents are within its possession. Thus, Toyota's argument regarding the "highly technical concepts" invoked in the RFAs that allegedly "seek broad admissions about global corporate entities' knowledge surrounding those concepts using imprecise language" are not applicable (Dkt. #117 at p. 3). As such, RFAs are, in fact, proper mechanisms by which to seek the desired information regarding documents in the control or possession of Toyota.

### b. Requests Concerning Knowledge

Plaintiffs' RFA numbers 20-23, 33-38, 42-47, 50, and 54 seek information regarding Toyota's knowledge about certain matters. Generally, Plaintiffs request Toyota admit or deny that it: (1) "does not measure the glass of the windshields equipped in subject vehicles to determine the amount of surface stress therein[;]" (2) "does not measure the glass of the windshields equipped in subject vehicles to determine the amount of internal stress therein[;]" (3) "does not know where the area of maximum residual tensile stress is located within the glass of the windshields equipped in subject vehicles[;]" (4) "does not know the maximum amount of residual tensile stress in the glass of the windshields equipped in subject vehicles[;]" (5) "does not know where the area of maximum residual compressive stress is located within the glass of the windshields equipped in subject vehicles[;]" and (6) "does not know the maximum amount of residual compressive stress in the glass of the windshields equipped in subject vehicles" (Dkt. #102, Exhibit 2 at pp. 7, 9–10, 12–14). Plaintiffs also requested that TMS admit or deny that it "does not possess any information regarding the number of confirmation vehicles that reliability tests were performed on to determine

the levels of internal stress or surface stress in the glass of the windshields equipped in subject vehicles[,]" and that it "does not possess any measurements confirming whether the glass of the windshields equipped in subject vehicles met the target stress levels set forth in the Technical Instruction Sheet No. 01203-00127, TOYO 00041259-68" (Dkt. #102, Exhibit 2 at pp. 15–16).[4]

According to Toyota, "Plaintiffs should not be permitted to circumvent proper discovery by using improperly drafted Requests for Admission in an attempt to force Toyota to admit or deny knowledge about complex technical issues pertaining to the windshields that are at the center of this litigation, especially when Toyota is not the company that performed the tests in question" (Dkt. #107 at p. 7). Plaintiffs respond that their requests are "a proper means to confirm that discovery regarding the subject matter of the requests is complete" because the "[r]equests seek merely to confirm Toyota's lack of knowledge or information concerning stress levels" (Dkt. #113 at p. 3). Plaintiffs also note that "expert testimony is not required to answer these simple yes or no questions" (Dkt. #113 at p. 3).

As noted above, under Rule 36, Plaintiffs may request Toyota admit "the truth of any matters within the scope of Rule 26(b)(1) relating to: facts, the application of law to fact, or opinions about either." FED. R. CIV. P. 36(a)(1). Rule 26(b)(1) states, in relevant part, that: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1).

Plaintiffs seek facts from Toyota that are, presumably, within the scope of Rule 26(b)(1): (1) whether Toyota measures the glass of the relevant windshields to make various determinations; (2) whether Toyota knows where certain areas of stress is located within the glass of the relevant windshields; and (3) whether Toyota knows the maximum amount of stress in the glass of the

---

[4] The information and measurements sought from TMS are found in Plaintiffs' requests numbers 50 and 54—of which the Court has determined have adequately been denied by Toyota.

7

relevant windshields. Contrary to Toyota's argument, Plaintiffs are not seeking information that requires Toyota to have performed tests on the windshields. Due to the nature of RFAs, Toyota may deny having knowledge of test results.

There is also no indication that Plaintiffs are attempting to improperly circumvent proper discovery tools. Rather, Plaintiffs are asking Toyota to admit or deny that they have *knowledge* of certain test results—not what those test results ultimately show. Importantly, whether Toyota has knowledge does not require expert testimony. Rather, the RFAs simply require Toyota to determine what it knows.

Plaintiffs' requests, on their face and notwithstanding any specific objection to the language contained therein, are proper RFAs. The Court therefore now must analyze Toyota's specific objections as to *how* Plaintiffs' propounded their requests.

## II. Requests Regarding Windshields Installed/Uninstalled

Toyota objected to Plaintiffs' RFA numbers 20-23, 32-35, 41-42, 44, 50, and 54 as "vague and ambiguous because they do not distinguish between windshields prior to installation or after installation" (Dkt. #102 at p. 4).[5] Though Toyota then proceeded to answer some of the requests as to uninstalled windshields, Toyota claims it did so "in good faith and without concealing or misrepresenting its own knowledge" (Dkt. #107 at p. 13).

Plaintiffs assert that "equipped" clearly means windshields installed in class vehicles. However, Plaintiffs also contend that "read in the broadest possible sense, [the RFAs] may refer to both installed and un-installed windshields" (Dkt. #113 at p. 5).

While "equipped" may clearly mean windshields installed in class vehicles, "equipped" does not clearly mean the windshields were installed in class vehicles *at the time relevant to the*

---

[5] As reiterated above, the Court does not consider Plaintiffs' requests numbers 50 and 54.

*requests*. While the ordinary definition of the word "equipped" may appear to support Plaintiffs' contentions, the Court is not convinced that applying the ordinary definition would adequately suffice to inform Toyota of the time period covered by the requests—especially considering, by Plaintiffs' own admission, the RFAs may refer to both installed and uninstalled windshields. Requests numbers 20-23, 32-35, 41-42, and 44 deal with the results of testing and, as noted by Toyota, that testing could have occurred in two stages—pre-installation and post-installation. While the Court again acknowledges that the information sought does not require Toyota to disclose the results of any testing, Plaintiffs still ask Toyota to admit or deny it has knowledge relevant to that testing.

In a RFA, "[e]ach matter must be separately stated." FED. R. CIV. P. 36(A)(2). If Plaintiffs intended Toyota to account for knowledge regarding both installed and uninstalled windshields, the requests run afoul to the plain language of the Rule. If Plaintiffs intended Toyota to only account for knowledge pertaining to windshields already installed, the requests as stated are not sufficiently specific. Further supporting the Court's decision is that "[a] matter admitted . . . is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended[,]" FED. R. CIV. P. 36(b), and "[a] Rule 36 admission is treated as a judicial admission." *De Beck v. United States*, No. , 2012 WL 12860949, at *24 (W.D. Tex. July 31, 2012) (citing *Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992)). Thus, if Toyota were to have to assume which time period is relevant, and Toyota then admits the request based on that presumption, it would be bound by those admissions unless the Court allowed withdrawal. The potential ramifications of Toyota's admissions are better addressed before the requests are answered—here, upon timely objection to the requests propounded by Plaintiffs. Because Plaintiffs do not differentiate between pre- and post-installation of windshields, and the use of the

word "equipped" does not clearly convey the relevant time period, the Court finds Toyota's objections to requests 20-23, 32-35, 41-42, and 44 well-founded, and Toyota will not be required to admit or deny those requests.

The Court acknowledges that Toyota has answered requests 20-23 as to uninstalled windshields. However, Plaintiffs' contention that "[t]o the extent a difference exists, Toyota cannot respond only concerning uninstalled windshields and ignore the [r]equests relative to installed windshields[,]" (Dkt. #113 at p. 6), is unpersuasive because "[e]ach request for admission should be phrased simply and directly so that it can be admitted or denied without explanation." 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2258 (3d ed. 1994) (citing United Coal Cos. v. Powell Const. Co., 839 F.2d 958, 968 (3d Cir. 1988)). As presently worded, Plaintiffs' requests would require Toyota to differentiate between windshields pre- and post-installation—thus necessitating an explanation.

## III. "Area" and "Maximum Amount" as Undefined Terms

Plaintiffs contend that "area," as found in request numbers 30-35 and 39-44, "is not vague or ambiguous" (Dkt. #102 at p. 7). Further, Plaintiffs assert that "maximum amount," as found in request numbers 36-38 and 45-47, "is not vague or ambiguous" (Dkt. #102 at p. 10). Toyota responds that Plaintiffs' terms "area" and "maximum amount" are undefined and not capable of reasonable interpretation in requests numbers 31-47.[6]

Despite the arguments presented by Toyota, the Court does not find the terms "area" and "maximum amount" to be so vague that they prohibit responses. Toyota should utilize the ordinary definition of the phrases, and it may "include any reasonable definition of the term or phrase at

---

[6] The Court has sustained Toyota's objections to requests 32-35, 41-42, and 44, leaving only request numbers 31, 36-40, 43, and 45-47 to be resolved pursuant to these objections.

issue to clarify [its] answers" if such clarification is deemed necessary by Toyota.[7] Thus, the Court overrules Toyota's objections as to requests numbers 30-31, 36-40, 43, and 45-47.[8] As such, Toyota will be required to admit or deny those requests for admission.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion to Compel Responses to Plaintiffs' Second Set of Requests for Admission Nos. 20-23, 30-47, 50, and 54 (Dkt. #102) is hereby **GRANTED in part** and **DENIED in part**.

Toyota is therefore **ORDERED** to respond to Plaintiffs' requests for admission numbers 30-31, 36-40, 43, and 45-47 within fourteen (14) days of this Order.

**IT IS SO ORDERED**.

**SIGNED this 13th day of May, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[7] Unlike the requests that did not differentiate between pre- and post-installation, the Court is not convinced that Toyota would have to offer an explanation to answer the requests appropriately and accurately. If Toyota chose to explain what definition it used in reaching its answers, that explanation would *clarify* its answers, not exist as a prerequisite for answering the requests.

[8] Toyota did not specifically refer to request 30 when supporting its objections in its response. However, the objection made to request 30 is the same objection made to requests numbers 31-47, and the Court assumes that Toyota intended to incorporate request 30 in the relevant argument as well.